#84491

IN THE DISTRICT COURT OF THE UNITED STATES
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 AUG 21 AM 10: 44

DEPUTY CLERK ___NT___

| | | |
|---|---|---|
| SHEILA SHULTE de ALBRECHT | § | |
|    Petitioner | § | |
| vs. | § | |
| | § | |
| THE CITY OF DALLAS TEXAS | § | NO. _____ |
|   ASST. FIRE CHIEF | § | |
|   TEDD O. PADGETT | § | 3-15CV2740-N |
|   An Individual, | § | |
| Lt. MONICA TURNER, DFD | § | JURY |
|   An Individual | § | |
|    Respondents | § | |

## ORIGINAL PETITION FOR DAMAGES
## WRONGFUL TERMINATION

COMES NOW, SHEILA SHULTE de ALBRECHT, Petitioner in the above entitled Cause, complaining of the City of Dallas, an incorporated City of the State of Texas, and Assistant fire Chief, Tedd O. Padgett, as an individual, employee of the City of Dallas Fire Department, and Lt. Monica Turner, as an individual employee of the City of Dallas Fire Department, all Defendants herein, who may be served with Process, by serving the Counsel for the City of Dallas, at the Legal Department of the City of Dallas at 1500 Marilla Street, 7d, Dallas, Texas, 75201; and, in support hereof would show unto the Court, the following:

### I.

### Equal Employment Opportunity Commission (EEOC)

Title VII of the Civil Rights Act of 1964, and as amended, creates the EEOC. Among the requirements of the referenced Law is that before an action may be brought for damages, or other relief, a letter referred to as a "Right to Sue Letter" is required to be issued by the EEOC. Please see Exhibit 1 attached hereto, which is a true copy of Plaintiff's Right to Sue Letter.

The EEOC also enforces: The Age Discrimination in Employment Act (ADEA), which in this case includes "people over forty (40) years old and are retaliated against, because the person complained about a discrimination." And other matters;

Title I of the *Americans with Disabilities Act of 1990* (ADA); which is applicable in the Cause;

Sections 102 and 103 of the *Civil Rights Act of 1991* to allow for punitive and compensatory damages, which Plaintiff seeks; and,

Sections 501 and 505 of the *Rehabilitation Act of 1973*, which requires that employers reasonably accommodate the known physical or mental limitations of an otherwise qualified individual, with a disability who is an employee, unless doing so would impose an undue hardship on the on the operation of the employer's business, which will be seen clearly to apply in this Cause.

II.

**For Background of this Cause see Exhibit 2; Plaintiff's sworn Affidavit**

Ms. Schulte had good relations with her peers and supervisors for the first several years of her employment, with the Defendant, City of Dallas (sometimes referred to as "COD." [The internal term for "City of Dallas." Other abbreviations, herein include: "ORR," for "Open Records Requests," and "PIP," for "Performance Improvement Program"].

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear herein and that the Court and Jury find:

the Defendants liable for Damages (both Compensatory and Punitive) in amounts commensurate with the Damages caused to the Plaintiff; and, for other and further relief, to which they may show themselves to be justly entitled.

Respectfully submitted,

_____
James R. Alderson
TX Bar # 009800000;

Attorney for Plaintiff Sheila Schulte

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

**To:** Sheila I. Schulte de Albrecht
10535 Pagewood Dr.
Dallas, TX 75230

**From:** Dallas District Office
207 S. Houston St.
3rd Floor
Dallas, TX 75202

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 450-2015-02328 | Danita Anderson-Richards, Federal Investigator | (214) 252-2819 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_signature_    5/27/15
Janet V. Elizondo,    (Date Mailed)
District Director

Enclosures(s)

cc: Vanessa A. Gray
Client Services Executive Mgr
CITY OF DALLAS
1500 Marilla
Room 6A North
Dallas, TX 75201

James Alderson
JAMES ALDERSON, ESQ.
5348 Emerson Avenue
Dallas, TX 75209

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>[ ] FEPA<br>[X] EEOC | Agency(ies) Charge No(s):<br>UNPERFECTED<br>450-2015-02328 |
|---|---|---|

Texas Workforce Commission Civil Rights Division and EEOC
*State or local Agency, if any*

**Name** *(Indicate Mr., Ms., Mrs.)*: Ms. Sheila I. Schulte de Albrecht
**Home Phone** *(Incl. Area Code)*: (214) 739-0684
**Date of Birth**: [redacted]

**Street Address** / **City, State and ZIP Code**: 10535 Pagewood Dr., Dallas, TX 75230

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

**Name**: CITY OF DALLAS-HUMAN RESOURCES DEPARTMENT
**No. Employees, Members**: 500 or More
**Phone No.**: (214) 670-3527
**Street Address** / **City, State and ZIP Code**: 1500 Marilla Street, Room 6a North, Dallas, TX 75201

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*
[ ] RACE [ ] COLOR [ ] SEX [X] RELIGION [X] NATIONAL ORIGIN
[X] RETALIATION [ ] AGE [ ] DISABILITY [ ] GENETIC INFORMATION
[ ] OTHER *(Specify)*

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: 08-01-2014  Latest: 08-01-2014
[ ] CONTINUING ACTION

**THE PARTICULARS ARE** *(If additional paper is needed, attach extra sheet(s))*:

On April 14, 2004, I began working for the City of Dallas as an Office Assistant; I was under the supervision of Lt Monica Turner when I was terminated.

I. **PERSONAL HARM**: On August 1, 2014, I was terminated.

II. **RESPONDENT'S REASON FOR ADVERSE ACTION**: Unacceptable conduct due to my inability to adequately perform the responsibilities of the position.

III. **DISCRIMINATION STATEMENT**: I believe that I was terminated due to my national origin (Peruvian) and religion; further, I was retaliated against for taking advantage of city rules.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date / Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**I swear that all I have to say is as true and accurate as if I were in a court of law.**
**Sheila Schulte de Albrecht**
**September 4, 2014**

On October 29, 2010 I was presented with my Final Performance for the previous year, I was rated Highly Successful. My supervisor, Lt. Bobby Baughn added "Sheila, you handle your job responsibilities in a professional and timely manner. You display a very professional image when dealing with the public. You always keep me informed of any issues that arise with your assigned duties. I know at times that the Open Records portion of your job assignment can be overwhelming. Thanks for all your help! I appreciate all that you do! It is a pleasure to work with you." Chief Carlin added a written note "Sheila, thanks for all you do to help the Division."
In 2011 I was also rated Highly Successful which was consistent with all of my prior performance evaluations.

I was hired by the Fire Department in April of 2004, as an Administrativn Assistant responsible for the Department's Smoke Alarm program. I got along very well with various supervisors who were assigned to oversee my work and was consistently rated highly successful in my annual performance evaluations.

I have an elderly mother who resides in Lima Peru, she has many chronic ailments and I am required to travel to Lima periodically during the year to take her to her doctors. Since passing my employee probation I had availed myself of the COD's family leave policy to facilitate those brief trips.

My fluency in Spanish and English were important to my assignment as there were numerous calls from elderly Spanish speakers concerning smoke alarms. In 2007 I was rated Superior by the American Counsil on the Teaching of Foreign Languages.

My troubles began in 2008 when Chief Cynthia Michaels sexually harassed me. In March 2008 I was required to attend a COD class on sexual harassment where we were instructed not to be afraid of retaliation and should in fact file a complaint, which prompted me to report Michaels. Ultimately, Michaels was not punished but merely told that she should stay away from me. She, however was free to continue her lascivious leering at me. I, however was reassigned to an inferior cubicle unsuited to the needs of my job. I subsequently retained a lawyer and filed an EEOC complaint. Later in a meeting with Chief Sipes I was berated for going outside the department to complain. I had complained to him earlier, his comments included the statement "That's the way she was born and I can't do anything about it". I had availed myself of the COD's job self nomination procedure by applying for a Spainish Translator position, I was sent a notice telling me that I was not qualified. Now I knew that the COD was not serious about their non-retaliation policy.

I subsequently dropped the EEOC complaint and decided that it was just too much trouble to

continue with a law suit.

In June of 2010, I requested family leave, I had complied with all COD rules and procedures. Despite my compliance Chief Sipes approached my desk telling me that that I would have to go through a long and arduous process to get family leave which could be rejected or for sure delay my departure causing me great hardship. I was shocked, became dizzy and fell to the floor injuring my spine. Subsequently, my supervisor advised Sipes that I was in compliance with procedures and the additional process he alluded to was not appropriate.
Since I had injured my back an injury on duty report was filed. The report was falsified to indicate that I slipped from my chair while I was attempting to sit down. To this day, I continue back therapy at my own expense since workers compensation was unable to help me.

While the above events are a few years old I believe they are the genesis of the Department's issues with my performance.

I first came to know Assistant Chief Padgett after he was assigned to Arson Investigation Division. It seemed that every time I had reason to go through the hallway there was a man waving at me, I returned the waves but at the time I had no idea who he was. I only found out his identity after he was assigned to the Assistant Chief position.

Following his appointment I was approached by various employees who alluded to an inappropriate relationship between Assistant Chief Padgett and myself. Being somewhat naive I didn't quite understand at first. On one occasion Section Chief Adams, from Arson, in the company of my co-workers complemented my purse commenting that someone must really like me to get me such an expensive item, while indiscreetly looking toward Padget's office. Another more embarrassing event occurred during a training session of about one hundred people on the new open records system by Ms. Jerry Carter, where she used Assistant Chief Padgett and myself as an example, which was greeted by knowing smirks of those around us. I will state unequivolkly there has never been any direct inappropriate contact between Assistant Chief Padgett and myself, however there apparently had been discussions linking us that may have been initiated by him or at the very least suggested by others to him which he had encouraged.

At the same time my evaluations went from highly successful to unsatisfactory. A new officer had been assigned to the group, she was assigned responsibility for smoke detectors and I believe the intention was to have her become my supervisor. While she did take over the smoke detectors, since she didn't understand Spanish, I was required to deal with the many Spanish speakers. In addition the phones weren't transferred from my desk and I had to send her voice mail requests for smoke alarms. There was no contact between us, I wasn't even sure of her name yet she took part in my evaluation. I believe the highlight of the evaluation was when I was told that the ORR's were not current because I was absent, due to vacation, sick time and family leave and that was why I was rated unsatisfactory. Needless to say, I refused to sign the form. Later I found out from my new supervisor that Officer Emily Campa had falsified my attendance records, recording several occurrences of authorized time off as unauthorized.

In November of 2013, upon returning from an authorized family leave, I found in my mail a pre-termination letter charging me with abandonment of my job. It seems I made a minor error in my family leave request. There were several prior conversations and e-mails records concerning the leave with my supervisor which were ignored, I was subjected to a intimidating and disturbing yelling rant by Assistant Chief Padgett at an internal affairs meeting after which I was suspended. Subsequently the pre-termination was rescinded after my supervisor "regained her memory" and corroborated the documented relavant conversations and messages between us.

The following month my new supervisor Monica Turner, told me the next evaluation could only partially be completed by her since she had only been in her new assignment for a month. The majority would be completed by the previous supervisors Baughn and Campa who of course rated me unsatisfactory. In essence my evaluation was completed by someone I had little or no contact with and was based on work that I should have accomplished when I wasn't there because of authorized absences.

Consequently, I was told I would have to be placed on H.R. PIP program or appeal the evaluation to Chief Bright.

That same month I was advised by my supervisor that my open records job would be changed to include an intensive physical search of all files. Considering that between 20 and 30 ORR's are received every day and at best about 8 ORR's could be completed per day under this new procedure it seemed evident to me that I was being set up for a fall. I suppose they realized the absurd reasoning of my last evaluation and had devised a new way to make me fail.

Since instituting the more labor intensive ORR procedure I have gone over and above to try to comply and have worked at least 200 hours beyond my normal hours without pay or recognition.

After being placed on PIP, Asstant Chief Padgett asked me if I would be interested in becoming his assistant, he told me that his current secretary disgusted him because of her personal habits and that he had to correct all correspondence that she did. I told him that I would most certainly accept the position because I had the experience and I knew I could help him. He said that everybody in the office would begin to respect me and my salary would increase significantly. He told me to keep the information confidential which I have until this moment. Subsequently there was no further mention of the position, perhaps because I was in PIP he was not able to place me in the position or maybe he was afraid of a lawsuit by his secretary.

The first PIP meeting was nothing more than a recap of the ORR's that were still open. I though perhaps if I asked for an open door meeting with Fire Chief Bright he would be enlightened enough to reverse the prior years unfair evaluation and obviate the necessity of the PIP sessions. It was evident that Assistant Chief Padgett authored the letter from Fire Chief Bright rejecting every point in my appeal.

I had made several suggestions on how to improve or speed up the ORR process however they were ignored. I even asked my supervisor what can I do, she advised me to get a lawyer.

The next few PIP's were more of the same, just a recap of uncompleted ORR's. Finally, in May after the last PIP I was told that I had failed, while it was not a surprise, I nevertheless asked for a meeting with Assistant Chief Padgett. My supervisor, Monica Turner attended as a non-participating witness. To this day I still find it hard to believe Padgett's one hour and forty minute tirade laced with xenophobic and anti-Catholic comments. (I have previously provided my notes regarding specifics of this incident)

During Assistant Chief Padgett's rant he showed me a stack of ORR's completed by another clerk in my group comparing it to another leaner stack completed by me in the same period of time. I though about this and could not understand how this could be as I almost never saw the clerk go to the filing room to do any research such as I was required. Later I noticed that my supervisor was able to complete 20 ORR's in a short period of time. I questioned her and she admitted that she only searched the CRMS data base and ignored the files. I asked if I could follow the same procedure as her and the other clerk, she emphatically replied **No**, I must go through the extensive research. Any hope I had of retaining my job was lost.

My health has suffered as a consequence of these events, I continue to suffer panic attacks and frequent migraines. A week before I was fired I passed out at my desk, 911 was called but I refused to go to the hospital, my supervisor sent me home for the balance of the day. It seems that I had experienced a severe panic attack, as I reached for my rosary, the very one that Assistant Chief Padgett had defamed, I simply fainted.

At my hearing on August 1st, the testimony that I gave was completely ignored, I hope and pray that you at least will listen to what I have to say and correct the wrong that has been done.

**All of the above I swear to be true.**

*Sheila Schulte*

ANDERS PIJEN TING
My Commission Expires
December 11, 2017

**I swear that all I have to say is as true and accurate as if I were in a court of law.**
**Sheila Schulte de Albrecht**
**September 4, 2014**

On October 29, 2010 I was presented with my Final Performance for the previous year, I was rated Highly Successful. My supervisor, Lt. Bobby Baughn added "Sheila, you handle your job responsibilities in a professional and timely manner. You display a very professional image when dealing with the public. You always keep me informed of any issues that arise with your assigned duties. I know at times that the Open Records portion of your job assignment can be overwhelming. Thanks for all your help! I appreciate all that you do! It is a pleasure to work with you." Chief Carlin added a written note "Sheila, thanks for all you do to help the Division."
In 2011 I was also rated Highly Successful which was consistent with all of my prior performance evaluations.

I was hired by the Fire Department in April of 2004, as an Administrative Assistant responsible for the Department's Smoke Alarm program. I got along very well with various supervisors who were assigned to oversee my work and was consistently rated highly successful in my annual performance evaluations.

I have an elderly mother who resides in Lima Peru, she has many chronic ailments and I am required to travel to Lima periodically during the year to take her to her doctors. Since passing my employee probation I had availed myself of the COD's family leave policy to facilitate those brief trips.

My fluency in Spanish and English were important to my assignment as there were numerous calls from elderly Spanish speakers concerning smoke alarms. In 2007 I was rated Superior by the American Counsil on the Teaching of Foreign Languages.

My troubles began in 2008 when Chief Cynthia Michaels sexually harassed me. In March 2008 I was required to attend a COD class on sexual harassment where we were instructed not to be afraid of retaliation and should in fact file a complaint, which prompted me to report Michaels. Ultimately, Michaels was not punished but merely told that she should stay away from me. She, however was free to continue her lascivious leering at me. I, however was reassigned to an inferior cubicle unsuited to the needs of my job. I subsequently retained a lawyer and filed an EEOC complaint. Later in a meeting with Chief Sipes I was berated for going outside the department to complain. I had complained to him earlier, his comments included the statement "That's the way she was born and I can't do anything about it". I had availed myself of the COD's job self nomination procedure by applying for a Spainish Translator position, I was sent a notice telling me that I was not qualified. Now I knew that the COD was not serious about their non-retaliation policy.

I subsequently dropped the EEOC complaint and decided that it was just too much trouble to

continue with a law suit.

In June of 2010, I requested family leave, I had complied with all COD rules and procedures. Despite my compliance Chief Sipes approached my desk telling me that that I would have to go through a long and arduous process to get family leave which could be rejected or for sure delay my departure causing me great hardship. I was shocked, became dizzy and fell to the floor injuring my spine. Subsequently, my supervisor advised Sipes that I was in compliance with procedures and the additional process he alluded to was not appropriate.
Since I had injured my back an injury on duty report was filed. The report was falsified to indicate that I slipped from my chair while I was attempting to sit down. To this day, I continue back therapy at my own expense since workers compensation was unable to help me.

While the above events are a few years old I believe they are the genesis of the Department's issues with my performance.

I first came to know Assistant Chief Padgett after he was assigned to Arson Investigation Division. It seemed that every time I had reason to go through the hallway there was a man waving at me, I returned the waves but at the time I had no idea who he was. I only found out his identity after he was assigned to the Assistant Chief position.

Following his appointment I was approached by various employees who alluded to an inappropriate relationship between Assistant Chief Padgett and myself. Being somewhat naïve I didn't quite understand at first. On one occasion Section Chief Adams, from Arson, in the company of my co-workers complemented my purse commenting that someone must really like me to get me such an expensive item, while indiscreetly looking toward Padget's office. Another more embarrassing event occurred during a training session of about one hundred people on the new open records system by Ms. Jerry Carter, where she used Assistant Chief Padgett and myself as an example, which was greeted by knowing smirks of those around us. I will state unequivolkly there has never been any direct inappropriate contact between Assistant Chief Padgett and myself, however there apparently had been discussions linking us that may have been initiated by him or at the very least suggested by others to him which he had encouraged.

At the same time my evaluations went from highly successful to unsatisfactory. A new officer had been assigned to the group, she was assigned responsibility for smoke detectors and I believe the intention was to have her become my supervisor. While she did take over the smoke detectors, since she didn't understand Spanish, I was required to deal with the many Spanish speakers. In addition the phones weren't transferred from my desk and I had to send her voice mail requests for smoke alarms. There was no contact between us, I wasn't even sure of her name yet she took part in my evaluation. I believe the highlight of the evaluation was when I was told that the ORR's were not current because I was absent, due to vacation, sick time and family leave and that was why I was rated unsatisfactory. Needless to say, I refused to sign the form. Later I found out from my new supervisor that Officer Emily Campa had falsified my attendance records, recording several occurrences of authorized time off as unauthorized.

In November of 2013, upon returning from an authorized family leave, I found in my mail a pre-termination letter charging me with abandonment of my job. It seems I made a minor error in my family leave request. There were several prior conversations and e-mails records concerning the leave with my supervisor which were ignored, I was subjected to a intimidating and disturbing yelling rant by Assistant Chief Padgett at an internal affairs meeting after which I was suspended. Subsequently the pre-termination was rescinded after my supervisor "regained her memory" and corroborated the documented relavant conversations and messages between us.

The following month my new supervisor Monica Turner, told me the next evaluation could only partially be completed by her since she had only been in her new assignment for a month. The majority would be completed by the previous supervisors Baughn and Campa who of course rated me unsatisfactory. In essence my evaluation was completed by someone I had little or no contact with and was based on work that I should have accomplished when I wasn't there because of authorized absences.

Consequently, I was told I would have to be placed on H.R. PIP program or appeal the evaluation to Chief Bright.

That same month I was advised by my supervisor that my open records job would be changed to include an intensive physical search of all files. Considering that between 20 and 30 ORR's are received every day and at best about 8 ORR's could be completed per day under this new procedure it seemed evident to me that I was being set up for a fall. I suppose they realized the absurd reasoning of my last evaluation and had devised a new way to make me fail.

Since instituting the more labor intensive ORR procedure I have gone over and above to try to comply and have worked at least 200 hours beyond my normal hours without pay or recognition.

After being placed on PIP, Asstant Chief Padgett asked me if I would be interested in becoming his assistant, he told me that his current secretary disgusted him because of her personal habits and that he had to correct all correspondence that she did. I told him that I would most certainly accept the position because I had the experience and I knew I could help him. He said that everybody in the office would begin to respect me and my salary would increase significantly. He told me to keep the information confidential which I have until this moment. Subsequently there was no further mention of the position, perhaps because I was in PIP he was not able to place me in the position or maybe he was afraid of a lawsuit by his secretary.

The first PIP meeting was nothing more than a recap of the ORR's that were still open. I though perhaps if I asked for an open door meeting with Fire Chief Bright he would be enlightened enough to reverse the prior years unfair evaluation and obviate the necessity of the PIP sessions. It was evident that Assistant Chief Padgett authored the letter from Fire Chief Bright rejecting every point in my appeal.

I had made several suggestions on how to improve or speed up the ORR process however they were ignored. I even asked my supervisor what can I do, she advised me to get a lawyer.

The next few PIP's were more of the same, just a recap of uncompleted ORR's. Finally, in May after the last PIP I was told that I had failed, while it was not a surprise, I nevertheless asked for a meeting with Assistant Chief Padgett. My supervisor, Monica Turner attended as a non-participating witness. To this day I still find it hard to believe Padgett's one hour and forty minute tirade laced with xenophobic and anti-Catholic comments. (I have previously provided my notes regarding specifics of this incident)

During Assistant Chief Padgett's rant he showed me a stack of ORR's completed by another clerk in my group comparing it to another leaner stack completed by me in the same period of time. I though about this and could not understand how this could be as I almost never saw the clerk go to the filing room to do any research such as I was required. Later I noticed that my supervisor was able to complete 20 ORR's in a short period of time. I questioned her and she admitted that she only searched the CRMS data base and ignored the files. I asked if I could follow the same procedure as her and the other clerk, she emphatically replied **No**, I must go through the extensive research. Any hope I had of retaining my job was lost.

My health has suffered as a consequence of these events, I continue to suffer panic attacks and frequent migraines. A week before I was fired I passed out at my desk, 911 was called but I refused to go to the hospital, my supervisor sent me home for the balance of the day. It seems that I had experienced a severe panic attack, as I reached for my rosary, the very one that Assistant Chief Padgett had defamed, I simply fainted.

At my hearing on August 1st, the testimony that I gave was completely ignored, I hope and pray that you at least will listen to what I have to say and correct the wrong that has been done.

**All of the above I swear to be true.**

*Sheila Schulte*

ANDERS PIJEN TING
My Commission Expires
December 11, 2017

## Events of May 9, 2014 Sheila Schulte de Albrecht

At 13:15 Lt. Monica Turner informed me that I was to attend an evaluation of my performance meeting. Present at the meeting in addition to Lt. Turner and myself was Lt. Shannon Hopps who witnessed the events and was instructed not to comment.

Lt. Turner provided me with a Mid-Year 2013-2014 Performance Appraisal which had been previously completed, assumingly by her or her superiors.

Lt. instructed me to read the Evaluation and make comments. She further told me that she had folders which would evidence her appraisal findings.

I reviewed each section noting that I had been scored either "usually or almost never" in each category with an overall rating of unacceptable. I protested each rating telling her that it was not fair and gave her evidence contrary to her ratings however she was either unresponsive or agreed with my comment yet would not not change the rating.

The comments section of the Appraisal was inaccurate in that the job responsibilities had changed per her instructions in October 2013 when she told me that in addition to searching the CRMS system that I must also search through the filing cabinets a binder containing earlier years and the office of the clerk responsible for filing reports not yet included in the CRMS or filing cabinets. The searching of files etc was labor intensive and time consuming (there are thousands and thousands of files), at least doubling the time necessary to complete my job. Other clerks who filled in for me during periods of my absence were able to accomplish a satisfactory performance level by either being provided additional help which has not been provided to me or by not searching the files thoroughly. I have made several suggestions for better ways to improve productivity which are documented (attached) however they have been ignored. Further, my work related back injury (worker compensation file) was intensified by the additional filing room work which involved stooping, lifting of boxes and other physical exertions.
I have pleaded for a dedicated printer as use of letterhead paper used in the general cue wastes both time and materials not only for me but for all employees.
I have cooperated with my supervisor in all ways and followed her instructions to the letter. Additionally, I work beyond my stipulated work day by at least an hour or more consistently without pay, compensatory time off or even recognition.

In summary, this evaluation is a continuance of management's concerted efforts to terminate my employment with the City of Dallas.

Subsequent to this meeting I requested a meeting with the bureau head Assistant Chief Ted Padgett.

At approximately 14:45 the closed door meeting with the Chief commenced, I was accompanied by my supervisor Lt. Monica Turner as an uncommenting witness.

I told the Chief I wanted to speak to him about my evaluation and possible ways that I can make the job easier albeit an almost impossible task. (Prior to this meeting I had presented my supervisor with a detailed breakdown of the time spent in researching ORR under the newly defined parameters)

The Chief interrupted me, not allowing me to finish my statement and began to tell me there were "no excuses" that when I am absent from the office another office assistant has to do my job. He emphasised this in louder terms repeatedly. I knew that Becky Gonzales was my backup when I am away from my job, this had been communicated to me previously by my supervisor Lt. Monica Turner. Chief Padgett reminded me of this in an accusatory tone and alluded to my "abusement" of Ms. Gonzales.
I attempted to explain the she was my backup but he interrupted me telling me that there were people sicker than me but they "came to work". I wanted to explain to him that I am in a program treatment for chronic migraine and even though I wanted to come to work I could not and in fact had not paid for the time I missed.
He refused to listen to me or my explanation, he was enraged and continued repeating the same accusations in a louder voice pointing to my supervisor and claiming that he did everything to try to make me feel comfortable and do my job but I disappointed him and my supervisor.

I said that I was sorry that had such an emotional effect upon him.

Chief Padgett became really enraged and commenced to spew the following allegations; he referred to the pre-termination letter (November 2013) that had been closed and expunged from my file per his instructions, he said since the beginning I wanted to manage his office and the people there, that I was so fresh I simply said I was wrong in the date of family leave and that was it, you think this is your office and you can do whatever you want? He would not permit me a response, further he stated "and you are almost molesting the people in the office by putting the airconditioning up or down to whatever you want". I told him that I did not manage the thermostat and in fact it was managed by people around him, it seemed to be the words of his secretary who seems to be uncomfortable in most temperature situations. I again repeated that it was not possible because I have not commented about the extreme heat in the winter months. He said that I lied because he

had not heard me. I didn't comment further because he again raised his voice to intimidated me not to respond, he continued to say that he gave me all the opportunities to develop my job, he put a better environment to socialize with the people in the office and gave me Lt. Turner as a supervisor so I can feel comfortable but it seems that I don't care whatever he does but I am hurting both the office and my supervisor Lt Turner, in that moment I was able to tell him him that I focused on my responsibilities and that I was sorry that I disappointed him, perhaps we could manage the job in another way and that's why I was there, he again interrupted me, raising his voice another level, he told me "who do you think you are, you just come to work one or two hours a day or just a few days a week".

He continued, Human Resources and my supervisor had given me the opportunity to improve my work through PIP meetings that were exclusively to help me meet my goals Lt Turner gave me a paper to complete with three accomplishment to complete in this past half year and he yelled that I had not put anything and what does that mean, I had a second to respond and said that my job for which I feel so proud had been reduced to typing, searching, sending letters to customers and e-mailing them with signatures that it was obvious that I did not have any cognizant goals similar to the ones I enjoyed while I was responsible for smoke detectors so I could not do more than constantly type I did not even have time for a break.

Moreover, I reminded him that I asked for a meeting with him after his appointment to discuss my situation and asked him in writing that I needed his support to be respected (officers should respond not ignore my calls and I should be a coordinator like other divisions ORR personnel ) and do my job with the requisite tools, printer etc.  He became excited, enraged, angered and impatient more and more and told me that they were only excuses. Raising his voice even more he told me that another office assistant had to do my job during my absence due to sick or family leave, that I should wait to take my family leave only when necessary, I said that my mother was 86 years old and alone in Peru. he responded "everybody has problems but he doesn't want to know mine or and details". I tried with no success to tell him that I was not compensated during these absences, He voice became louder, he became more and more emotional saying that I should use my vacation and sick time.  I tried to tell him over his shouting that I had less sick and VC than anybody else and that unfortunately I used all my time for taking care of my elderly mother.

After this conversation that seemed to be about my job, he began to say a series of inappropriate statements, "if you don't like this country, if you are always saying that you are alone here and have nobody to talk to and you consider yourself higher than everybody else in position and intelligence, why don't you return to that place that was your country and that if it were him he would do the same immediately if he didn't like his job or the place he

was". He did not allow me to answer, he continued at least three times saying that I was a beautiful, intelligent and bilingual person and among "my people", diminishing tone, " I would be better".

He continued looking enraged at me and asked me "why do I want to be in this country or office, he could not explain this to himself" and he then responded to himself saying that "he really didn't want to know" at least two times. He continued not allowing any response, " how do I explain to myself that my job was done on time without overdues by another office assistant while I was sick" by another office assistant. I was able to respond that "I had some Ideas about it", he pretended not to listen and commented even louder saying that "you can do only a certain amount of letters to the customers every day because it seems that your mind is always in another place because you are thinking about your country or another place" and that I should be concentrated on my job. I responded that yesterday I sent Lt. Turner a thorough analysis of my job duties and the time required he can read it and I was confident that no one could be as fast as I am but it seems that I am the only one who needs to be in the filing room for ½ day doing research and it seemed to me to be a set up engineered to fire me.

He told me again, furiously that everything is in my mind pointing at his head attempting to intimidate me, to which I asked him " sir are you saying I'm crazy" he responded with a surprised face "no I'm not saying that but… " he continued " I can do whatever I want and if necessary I will just throw you out of this office at this moment", at that moment I stood up asked for a Kleenex sat down again with the best attitude I could have, being sorry for his emotional distress and told him "continue please Chief, please" He continued telling me that when he came as the assistant chief last year he sent two people to tell me to change jobs specifically Capt. Florence from recruitment Dallas Fire Dept and that gave me the last opportunity to keep my salary and not be fired and that I would at least have the same salary if not a better position but would be able to at least feed my family but now because of not accepting his good intentions I am in this situation that could not be changed. I tried ( he was enraged even more, his face was red) to explain to him my situation and I was able to work together to improve my job… , at this point he smiled sarcastically and told me staring at my eyes, "NO, it's too late" I was surprised to understand, in seconds that Mr. Padgett was personally emotionally distressed beyond reason, in that moment there was nothing that I could offer or say that would help me and I reassured myself in the idea that this was a long term plan to fire me and that it was very probable that no matter what nothing would help me because of his personal revenge.
For the rest of the meeting I tried to keep quiet it was apparent that he wanted to empty his emotions.

He continued "I don't know what you think you are but you already had four evaluations, a PIP meeting with Human Resources, that will be the last, and I really don't know how you are doing with that so I don't know what will happen but I have the idea that, you know what Pal, it seems you will not have a job next month"

I asked "are you saying you are firing me" he responded " No but I don't know about Human Resources or the City of Dallas I softly said, not to enrage him more, had he told all the COD, not to give me a job, he did not respond, he said" in a louder intimidating tone "if somebody asks me about you I will say I don't want her, I don't want her her, its too late, its too late, nobody will help you, NOT EVEN PRAYING YOUR ROSARY", in that moment I knew it was hopeless.

I decide to stay quiet and let him finish his verbal violence; he began to say once again that I should blame myself for losing my job and not pointing at other people, he turned and took a paper from his drawer, the letter I had sent to Chief Bright in my last meeting with him where I asked for a better environment and better tools to do my job: I also mentioned that in the time of the pre-termination letter Asst Chief Padgett cost me emotional distress because of his outburst so he pointed to that part in the letter asking me "why did I say that lie? I responded, "it's not a lie, its the truth". He said " this paper is made up it doesn't say the truth, but you had to give something to him, that's not right" I couldn't respond as he continued to shout more and more. He also continued to rant " I want you to know that I'm not three things a thief, a liar, and I don't cheat on my wife, I love her and I will always respect her:" I asked why was he saying that, what did it have to do with our meeting" he responded " I only wanted you to know, there's a lot of guys around here that have 10, 15 women"

He finally said " I don't want to take anymore of your supervisor's time so this is over". He stood looking down at the floor as I exited the office and told him "thank you for your time sir"

Upon exiting, I found his secretary listening at the door.

JS 44-TXND (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** _Ms. Sheila Samuels_

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _Dallas_
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _Dallas_
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED AUG 21 2015 CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
_James R. Anderson_
_5722 Emerson Ave_
_Dallas TX 75206_

Attorneys *(If Known)*

3-15CV2740-N

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☒ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_Title VII of Civil Rts Act 1964 + other EEOC enforced Acts_
Brief description of cause:
_Wrongful Termination_

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY** *(See instructions)*: JUDGE _____ DOCKET NUMBER _____

DATE _8/21/15_          SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____